**Affirmed as Modified in Part, Reversed and Remanded in Part, and Opinion filed October 10, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00135-CR

---

**LANDON JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1620605**

---

## O P I N I O N

Appellant Landon Johnson appeals his conviction for aggravated assault of a security officer by threat. A jury found appellant guilty and assessed his punishment at 45 years in prison. In his first issue, appellant contends that the evidence was insufficient to sustain his conviction because there was no evidence he threatened complainant or that complainant was a security officer. In his second issue, appellant contends that the jury charge erroneously failed to include the

statutory definition of security officer and stated that a security officer is a public servant. Concluding the evidence was insufficient to establish the complainant was a security officer and the trial court erred in its submission of the jury charge, we modify the judgment and remand to the trial court for a new sentencing hearing.

## *Background*

Appellant was charged with aggravated assault of a security officer for intentionally and knowingly threatening complainant Michael Freeman with imminent bodily injury and using or exhibiting a deadly weapon, namely a firearm, during the commission of the offense. Evidence indicated that Freeman was working security at a night club in the early hours of February 2, 2019, when appellant arrived at the club and struck a security manager. After Freeman separated the two men, Freeman retrieved a gun out of a vehicle and held it until appellant left the scene. After police came and went from the club, appellant returned carrying a rifle. Appellant moved toward Freeman and other people standing outside the club, pointed the rifle at Freeman, and began firing. Freeman glanced toward appellant and attempted to run as the others in front of the club also ran, but Freeman only made it a couple of steps before collapsing to the ground. Appellant shot Freeman five times and also shot another person working security for the club. The relevant events were captured by the club's surveillance video equipment and shown to the jury.

As will be discussed in more detail below, the jury charge equated being a security officer to being a public servant and then repeatedly used the latter term in instructing the jury and querying whether appellant was guilty of a crime. The judgment of conviction, however, states that appellant was convicted of aggravated assault on a security officer.

2

## *Sufficiency of the Evidence*

As stated, in his first issue, appellant challenges the sufficiency of the evidence to support his conviction, specifically asserting that there was no evidence he threatened Freeman or that Freeman was a security officer. In assessing the sufficiency of the evidence to support a conviction, we must consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational trier of fact could have found the challenged element or elements of the crime beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we presume that the jury resolved any conflicts in the State's favor and defer to that resolution. *Whatley*, 445 S.W.3d at 166. We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As judge of the credibility of the witnesses, a jury may choose to believe all, some, or none of the testimony presented. *Cain v. State*, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

As stated, appellant was charged with aggravated assault of a security officer by threat. *See* Tex. Penal Code § 22.02(b)(1)(E). Among other possibilities, a person commits the offense of aggravated assault "if the person commits assault as defined in § 22.01 and the person . . . uses or exhibits a deadly weapon during the commission of the assault." *Id*. § 22.02(a)(2). A person commits assault as defined in section 22.01, among other options, "if the person . . . intentionally or knowingly threatens another with imminent bodily injury." *Id*. An aggravated assault offense is elevated from a second-degree felony to a first-degree felony if it

is "against a person the actor knows is a security officer while the officer is performing a duty as a security officer." *Id*. § 22.02(b)(2)(E). The offense can also be elevated to a first-degree felony if it is "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." *Id*. § 22.02(b)(2)(B).

"We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to 'the elements of the offense as defined by the hypothetically correct jury charge for the case.'" *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id*. (quoting *Malik*, 953 S.W.2d at 240).

**Threatened.** Appellant first asserts that there was no evidence that he threatened Freeman prior to the shooting. The Penal Code does not define "threaten" in this context. A threat, however, can be verbal or nonverbal. *See Smith v. State*, 286 S.W.3d 333, 343 (Tex. Crim. App. 2009). Additionally, "there is no statutory requirement that a victim must instantaneously perceive or receive th[e] threat of imminent bodily injury as the actor is performing it." *Olivas v. State*, 203 S.W.3d 341, 350–51 (Tex. Crim. App. 2006). As numerous courts have held, the act of pointing a gun at someone can constitute threatening conduct, as can the act of firing a gun at someone. *See, e.g., Mitchell v. State*, 546 S.W.3d 780, 786 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("The act of pointing a loaded gun at someone, by itself, is threatening conduct that supports a conviction for aggravated assault."); *Parker v. State*, 489 S.W.3d 609, 613 (Tex. App.—Texarkana 2016, no

pet.) ("[T]he jury was free to . . . infer that [defendant] intentionally or knowingly pointed the shotgun at [complainant], thereby threatening him with imminent bodily injury."); *Jefferson v. State*, 346 S.W.3d 254, 257 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding evidence defendant discharged firearm into home supported conviction for aggravated assault by threat); *Robbins v. State*, 145 S.W.3d 306, 314 (Tex. App.—El Paso 2004, pet. ref'd) (holding evidence defendant fired a gun in the officer's direction established aggravated assault); *Dickerson v. State*, 745 S.W.2d 401, 403 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) ("The pointing of a gun alone establishes the threat.").

Here, there was evidence appellant pointed a rifle at Freeman, fired multiple shots at him, and, indeed, shot him five times. This is clear evidence on which the jury could conclude that appellant threatened Freeman with imminent bodily injury. *See, e.g.*, *Mitchell*, 546 S.W.3d at 786; *Jefferson*, 346 S.W.3d at 257; *Robbins*, 145 S.W.3d at 314.[1] We therefore overrule appellant's first issue in part.

**Security officer.** Appellant next contends that the evidence was insufficient to support the conclusion that Freeman was a security officer at the time of the assault. As mentioned, if the actor knew the complainant was a security officer

---

[1] Appellant cites *McGowan v. State*, 664 S.W.2d 355 (Tex. Crim. App. 1984), and *Benjamin v. State*, 621 S.W.2d 617 (Tex. Crim. App. 1981), as supporting the conclusion that no threats were made in this case. However, both cases are readily distinguishable from the present facts. In *McGowan*, the Court held that the evidence was insufficient to prove assault by threat where the complainant was stabbed in the back of the head and did not see the knife prior to being stabbed. 664 S.W.2d at 357. In *Benjamin*, the Court held that the evidence was insufficient to prove assault by threat where the complainant was "a bystander who was struck by a stray bullet." 621 S.W.2d at 619. Here, there was evidence appellant pointed a rifle and fired at Freeman after an altercation in which both men were involved. Freeman and others ran from appellant as appellant was pointing and firing the rifle. This case is not remotely similar to *McGowan* or *Benjamin*. We additionally note that the Court of Criminal Appeals has explained that *McGowan* does not stand for the proposition that the State must prove that the complainant perceived a threat in order to establish the elements of assault by threat. *Olivas*, 203 S.W.3d at 342–351 (leaving resolution of that issue open); *see also Dobbins v. State*, 228 S.W.3d 761, 766 & n.6 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) (discussing *Olivas* and *McGowan*).

5

performing a duty as a security officer at the time of the offense, it elevates an aggravated assault offense from a second-degree felony to a first-degree felony. *See* Tex. Penal Code § 22.02(b)(2)(E). Section 22.02 defines "security officer" as either "a commissioned security officer as defined by Section 1702.002, Occupations Code, or a noncommissioned security officer registered under Section 1702.221, Occupations Code." *Id*. 22.02(d)(2). The State concedes that it failed to produce evidence that Freeman was either commissioned under section 1702.002 or registered under section 1702.221. Indeed, although there was evidence Freeman was working security for the club on the morning in question, there was no evidence he was a commissioned or registered security officer as required by the statute. *See id*. Accordingly, we sustain appellant's first issue in part. Our disposition of the appeal in light of this holding will be discussed below after we address appellant's complaints regarding the jury charge.

### *The Jury Charge*

In his second issue, appellant complains that the trial court erroneously (1) failed to include the statutory definition of security officer in the jury charge and (2) instructed that a security officer is a public servant. Simply put, the jury charge is riddled with errors. Not only is appellant correct that the charge failed to include the statutory definition of security officer and erroneously instructed that a security officer is a public servant, it also repeatedly misrepresented the charged offense as aggravated assault on a *public servant* rather than the actual charged offense of aggravated assault on a *security officer*. The key question here is not whether the charge contains error but whether the error is harmful.

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In a criminal case, we review complaints of jury charge error in two steps. *Cortez v.*

6

*State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). If not, our analysis ends. *Kirsch*, 357 S.W.3d at 649. Second, we review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id*. The degree of harm necessary for reversal depends on whether the appellant preserved error by objecting to the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). When charge error is not preserved, as in this case, reversal is not required unless the resulting harm is egregious. *Id*.; *see also* Tex. Code Crim. Proc. art. 36.19; *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

Charge error is egregiously harmful when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). That is, the error must have been so harmful that the defendant was effectively denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 172. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Under *Almanza*, the record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750. Neither party has the burden to show harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

A trial court is statutorily obligated to instruct the jury on the law applicable to the case. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (citing Tex. Code Crim. Proc. art. 36.14). That obligation "requires that each statutory definition that affects the meaning of an element of the offense must be communicated to the jury." *Id*. (quoting G. Dix & R. Dawson, Texas Practice: Criminal Practice and Procedure § 36.11 at 562 (2nd ed. 2001)).

7

Under the Penal Code, while a person conceivably could be both a security officer and a public servant, a security officer is not a public servant simply by virtue of being a security officer. *Compare* Tex. Penal Code § 1.07(a)(41) (defining "public servant") *and id*. § 22.02(d)(2) (defining "security officer"); *see also Ortiz v. State*, 623 S.W.3d 804, 815 (Tex. Crim. App. 2021) (Keller, P.J., dissenting) (discussing the alternative elevating elements of section 22.02 and noting, "In a given case, a victim could be both a public servant and a security officer.").

Here, as stated above, the trial court erred in failing to include the statutory definition of security officer in the jury charge, instructing the jury that a security officer is a public servant, and repeatedly representing the charged offense as aggravated assault on a public servant rather than the actual charged offense of aggravated assault on a security officer. We note that all of these errors, however, relate to the elevating element of whether the complainant was a security officer (which elevated the offense from a second-degree felony to a first-degree felony) and not to the basic underlying offense of aggravated assault by threat. Appellant does not raise any complaints regarding the charge submission on the basic underlying offense of aggravated assault. As also discussed above, the State failed to offer any evidence in this case to establish that Freeman was a security officer as that term is defined by section 22.02. With these thoughts in mind, we turn to the proper disposition of this appeal.

### *Disposition*

Under the Court of Criminal Appeals' opinions in *Thornton v. State* and *Bowen v. State*, when a court determines that evidence is insufficient to support a conviction, the court may reform the judgment to reflect a conviction for a lesser-included offense. *Thornton*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014)

(discussing *Bowen*, 374 S.W.3d 427, 428–32 (Tex. Crim. App. 2012)); *see also Lang v. State*, 664 S.W.3d 155, 163 (Tex. Crim. App. 2022) (discussing *Thornton* and *Bowen*). The purpose of such reformation is "to avoid the 'unjust' result of an outright acquittal" and to respect the factfinder's determination of guilt. *Thornton*, 425 S.W.3d at 298, 300. Accordingly, courts should limit reformation to when the reformed judgment is for a lesser offense the commission of which can be established from facts the jury actually found. *Id*. at 298–99. Reformation is typically proper when the lesser included offense is authorized by the indictment. *Walker v. State*, 594 S.W.3d 330, 340 (Tex. Crim. App. 2020).

After finding the evidence insufficient to support the conviction and determining the alternative offense is a lesser-included offense of the charged offense, reformation to the lesser-included offense is required if the reviewing court can answer yes to two questions: (1) in convicting the defendant of the greater offense, must the jury have necessarily found every element necessary to convict for the lesser-included offense? And, (2) was sufficient evidence adduced at trial to support a conviction for the lesser-included offense? *Lang*, 664 S.W.3d at 163; *Thornton*, 425 S.W.3d at 300. If the answer to either of these questions is no, the judgment should not be reformed and the defendant should be acquitted. *Lang*, 664 S.W.3d at 163. These *Thornton* questions help prevent "arbitrary deprivation of liberty based upon charges never filed while also ensuring that the State carries its burden to prove each element of the charged offense beyond a reasonable doubt." *Walker*, 594 S.W.3d at 338. Moreover, the standards serve to "give effect" to the verdict "by tying reformation to what the jury necessarily found when it reached that verdict." *Id*.

In summary, reformation is required to a lesser-included offense when a reviewing court determines that: (1) the evidence was insufficient to support the

conviction; (2) there is a lesser-included offense of the greater offense the defendant was convicted of; (3) the factfinder, in convicting the defendant of the greater offense, necessarily found every element required to convict him of the lesser-included offense; (4) the evidence was sufficient to support a conviction for the lesser-included offense. *Lang*, 664 S.W.3d at 163–64.

In the present case, we determined above that the evidence was insufficient to support appellant's conviction for aggravated assault of a security officer by threat because the State offered no evidence that Freeman was a security officer. Aggravated assault by threat is a lesser-included offense of aggravated assault of a security officer by threat because it requires proof of exactly the same elements except for the elevating element of the complainant being a security officer. *Compare* Tex. Penal Code § 22.02(a) *with id*. § 22.02(b)(2)(E); *see also Thornton*, 425 S.W.3d at 298–99; *Lavern v. State*, 48 S.W.3d 356, 361 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (en banc). In finding appellant guilty in this case, the jury necessarily found every element required to convict him of aggravated assault by threat. And, the evidence is sufficient to support a conviction for that lesser-included offense. As discussed above, appellant was clearly shown in an altercation that involved Freeman at a night club; after which, appellant returned to the club carrying a rifle, moved toward Freeman and other people standing outside the club, pointed the rifle at Freeman, and began firing. Freeman glanced toward appellant and attempted to run, as others in front of the club also ran, but Freeman only took a couple of steps before collapsing to the ground. Appellant shot Freeman five times and also shot another person working security for the club. Under *Thornton*, *Bowen*, and *Lang*, we are therefore required to reform the judgment to show a conviction for the lesser-included offense of aggravated assault by threat. *Lang*, 664 S.W.3d at 163–64; *Thornton*, 425 S.W.3d at 300; *Bowen*, 374

10

S.W.3d at 428–32.

Of course, in this case, there was also error in the jury charge. The Court of Criminal Appeals has also applied its *Thornton* and *Bowen* reasoning to reform a conviction in a case involving jury charge error that only affected the jury submission on an element that elevated an offense from a second-degree felony to a first-degree felony. *Arteaga v. State*, 521 S.W.3d 329, 340 (Tex. Crim. App. 2017), superseded by statute on other grounds as stated in *Lopez v. State*, 600 S.W.3d 43, 46 (Tex. Crim. App. 2020). The Court recognized that the typical remedy for harmful jury charge error is to reverse the conviction and remand for a new trial, but the Court again noted that "if the harm suffered by the defendant due to charge error can be remedied by a different, less drastic remedy, . . . then a defendant should not get the windfall of a new trial at the expense of usurping the role of the factfinder." *Id*. (citing *Thornton*, 425 S.W.3d at 298, and *Almanza*, 686 S.W.2d at 171).

As discussed above, the jury charge error in the present case likewise only affected the submission on an elevating element—in this case the question of whether Freeman was a "security officer." Thus, even assuming egregious harm, the remedy for such error would be reformation of the judgment to show a conviction for the lesser-included offense of aggravated assault. Because both the insufficiency of the evidence regarding the elevating element and the charge error relating to the elevating element should result in the reformation of appellant's conviction, we will reform appellant's conviction to the lesser-included offense of aggravated assault.

In each controlling case discussed above, i.e., *Lang*, *Arteaga*, *Thornton*, and *Bowen*, upon reforming the conviction or ordering the conviction reformed, the Court of Criminal Appeals has also remanded for a new sentencing hearing. *Lang*,

664 S.W.3d at 176; *Arteaga*, 521 S.W.3d at 341; *Thornton*, 425 S.W.3d at 307; *Bowen*, 374 S.W.3d at 432. The State urges in the present case, however, that such a remand is not necessary because (1) the punishment range would be the same on remand due to the fact appellant's conviction is enhanced by two prior convictions, and (2) the court can "be fairly assured that the error had no more than a slight influence on the punishment verdict," citing Texas Penal Code section 12.42(d), Texas Rule of Appellate Procedure 44.2(b), and *McGowen v. State*, 25 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

We disagree with the State's analysis and conclusion. Reformation of a conviction under *Lang*, *Arteaga*, *Thornton*, and *Bowen* inherently involves changing the nature of the offense for which punishment is being assessed. Even though the range of punishment may be the same due to enhancements under section 12.42, the nature of the offense for which sentence is being assessed in the particular case is in some way less serious after reformation than the offense for which the original factfinder assessed punishment. For example, here, the original jury was asked to assess punishment for the offense of aggravated assault of a public servant, but the reformed offense is simply aggravated assault.[2] A jury might consider the "public servant" (or "security officer") factor to elevate the nature of the crime in much the same way as the legislature did in passing the relevant amendments to Penal Code section 22.02. Accordingly, we believe the best course of action is to remand for a new sentencing hearing, just as the Court of Criminal Appeals has done in the controlling cases. *See Lang*, 664 S.W.3d at 176; *Arteaga*, 521 S.W.3d at 341; *Thornton*, 425 S.W.3d at 307; *Bowen*, 374 S.W.3d at 432.

_____

[2] As discussed, this submission was error, as the jury should have been asked about aggravated assault of a *security officer*, not aggravated assault of a *public servant*.

## *Conclusion*

We modify the judgment to reflect conviction for aggravated assault and remand to the trial court for a new sentencing hearing.


/s/  Frances Bourliot
    Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.

Publish — TEX. R. APP. P. 47.2(b).